# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2628-19

M.E.G.,

    Plaintiff-Respondent,

v.

C.P.,

    Defendant-Appellant.

_____

       Submitted May 3, 2021- Decided July 8, 2021

       Before Judges Messano and Smith.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FD-11-0839-19.

       Juliana E. Blackburn, attorney for appellant.

       Respondent has not filed a brief.

PER CURIAM

After a plenary hearing, defendant appeals a joint custody order granting plaintiff parent of primary residence status for their child, D.G.[1] We affirm for the reasons set forth below.

I.

D.G was born on June 10, 2016 to the parties. After D.G.'s birth, the parties planned to move to Florida for a fresh start and financial stability. On November 13, 2017, the parties executed a relocation agreement which provided for defendant and D.G. to relocate to Florida with plaintiff joining them later.

In December 2017, defendant and D.G. moved into defendant's mother's house in Florida. D.G. had his own room, and defendant obtained health insurance and a pediatrician for him. Plaintiff supported the child by sending money. Defendant's mother and Plaintiff helped to pay for daycare. Initially, defendant had a difficult time finding work in Florida, but eventually secured a low-paying job. Between December 2017 and May 2018, plaintiff did not visit defendant and D.G. in Florida and the parties' relationship began to deteriorate. In May 2018, the parties separated, however, in the same month defendant brought D.G. to New Jersey to live with plaintiff until she became financially

---

[1] To protect the identity of the child, as well as the child's relationship to its parents, we use initials throughout this opinion. Rule 1:38-3(d)(13).

stable. Once stable, defendant's intention was for her to come back to New Jersey and get their child. After she returned to Florida, defendant maintained contact with D.G. through phone and video phone calls. Eventually, defendant found better employment, and when she visited D.G. in New Jersey, she took the child back to Florida without plaintiff's consent. Plaintiff filed an order to show cause seeking D.G.'s return. The trial court granted the relief and defendant returned D.G. to New Jersey.

Defendant then filed a motion seeking to be named parent of primary residence. After a hearing, the court granted plaintiff temporary residential custody of D.G. Defendant then moved for modification of the temporary residential custody order. She sought permission to return the child to Florida.

At the modification hearing, defendant testified she offered to provide plaintiff food, clothing, and diapers and he responded with verbal abuse. She further testified plaintiff did a poor job in nurturing a relationship between her and the child and that plaintiff made mother-son communications difficult.

Plaintiff testified he was starting a moving company when defendant brought him the child. He asserted raising D.G. while she was away hurt his ability to run the business. He testified that defendant refused when he asked

3

her to take D.G. back. Plaintiff testified that he shut down his business because he could not take care of D.G. and continue to manage it.

Once it was clear to plaintiff that defendant was not returning for the child, he enrolled D.G. in school and obtained health insurance. He began to involve D.G. in social activities with his New Jersey relatives.

By November 2018, defendant found a well-paying job as an occupational therapist, and she informed plaintiff she was ready to take their child back. Plaintiff was reluctant to return D.G. but defendant continued to pursue efforts to bring D.G. back to Florida.

In February 2019, defendant visited D.G.; plaintiff conditioned the visit on her promise not to take D.G. back to Florida. Defendant agreed, but she felt since she had the relocation agreement, it wouldn't matter if she took D.G. with her back to Florida. On February 3, defendant took D.G. back to Florida without telling plaintiff. She did not tell plaintiff because, among other reasons, she was afraid that he would try to stop her.

The trial court found both parties testified credibly. The court found a change in circumstances occurred when defendant asked plaintiff to take the child while she looked for work in Florida. The court found these circumstances changed during the course of the child's life and the parties' relationship. The

4

court further found the original relocation agreement did not "carry much weight anymore" and should not be enforced.

The court reviewed N.J.S.A. 9:2-4(c)'s fourteen factors. On the first factor, the court found that the parties have an ability to communicate and cooperate in matters relating the child, but there are also times they cannot do so for themselves. On the second factor, the court found each parent willing to accept custody, and that plaintiff was less than cooperative in providing communication time for defendant. On the third factor, the court noted that plaintiff made efforts to keep D.G. together with his half-brothers, for example, taking D.G. and his two brothers to iPlay America, an amusement park. On the fifth factor, the court found no "substantial history of domestic violence" and no threat of physical abuse or threat to the safety of the child. On the sixth factor, the court found D.G.'s preference did not apply because the child was not old enough to have the capacity to form an intelligent decision. On the seventh factor, the court found both parents can adequately care for D.G., including handling D.G.'s ongoing dental issues. On the eighth factor, the court found that both parents can provide a stable home environment. On the ninth factor, the court found that both parents can provide for D.G.'s educational needs, noting that plaintiff enrolled D.G. in pre-school in Princeton. On the eleventh factor,

5

concerning geographical proximity, the court found that both parents are fit, but noted the distance between Florida and New Jersey made coordinating parenting time difficult. On the twelfth factor, the court found that both parents spent quality time with D.G. prior to and after their separation. On the thirteenth factor, the court found that the parties are serious about their employment responsibilities. On the fourteenth factor, the court found that D.G. would be able to better maintain relationships with his brothers if he remained in New Jersey.

The court further found those relationships would be better maintained by plaintiff. The court noted "some concerns" with defendant dropping D.G. off to plaintiff in New Jersey while she looked for employment in Florida. The court, after observing defendant testify, found she had a "less passionate" attitude about D.G. On January 17, 2020, at the conclusion of the hearing, the court found changed circumstances. The court ordered joint custody of the child; that plaintiff be the parent of primary residence; and that defendant be the parent of alternate residence, finding this arrangement to be in the child's best interests.

On appeal, defendant raises the following points:

> POINT I
> THE TRIAL COURT ERRED IN ITS DECISION
> NOT TO ENFORCE THE PARTIES' BINDING
> RELOCATION AGREEMENT

6

POINT II
THE TRIAL COURT ERRED IN NOT ENFORCING THE PARTIES' BINDING RELOCATION AGREEMENT BECAUSE NO SUBSTANTIAL EVENT OR ACTION OCCURRED BETWEEN THE PARTIES CONSTITUTING CHANGE CIRCUMSTANCES

POINT III
THE TRIAL COURT ERRED IN RELYING ON ONE OF FOURTEEN EQUALLY WEIGHTED BEST INTEREST FACTORS AS THE BASIS FOR ITS DECISION TO AWARD THE PLAINTIFF CUSTODY

II.

Our review of a Family Part judge's fact finding is limited. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" A.J. v. R.J., 461 N.J. Super. 173, 180 (App. Div. 2019) (quoting Cesare, 154 N.J. at 411-12). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015)

7

(quoting Cesare, 154 N.J. at 412).  However, we review legal determinations de novo.  See Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendant argues the trial court erred by refusing to enforce the parties' binding relocation agreement.  Defendant also argues the court's decision violates the public policy of encouraging parents to work together without court intervention.  We disagree.

In "custody cases, it is well settled that the court's primary consideration is the best interests of the children."  Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)); see also Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (citing Beck v. Beck, 86 N.J. 480, 496  n.8 (1981)) ("A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4.").  "The court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children."  Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)).

A-2628-19

N.J.S.A. 9:2-4(d) provides that courts must order custody arrangements that both parents agree to unless it is not in the best interest of the child. N.J.S.A. 9:2-4(d). "Parties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (citing In re Baby M., 109 N.J. 396, 418 (1988)). "While custody agreements should be taken into account by the court, a trial court must determine whether the agreement is in the best interests of the children." Ibid. (citing Wist v. Wist, 101 N.J. 509, 512-13 (1986)).

It is also well-settled that a party seeking modification of an existing custody arrangement must demonstrate a change in circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). To determine whether there are changed circumstances, the court must consider the circumstances that existed when the original custody order was entered. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). After considering those facts, the court "may ascertain what motivated the original judgment and determine whether there has been any change in circumstances . . . ." Id. at 288.

Defendant argues public policy encourages parties to enter agreements without the involvement of the court, and the court runs afoul of this policy by refusing to bind the parties to the agreement. We again disagree. The "courts'

commitment to enforce such agreements is tempered by its equitable power to review and modify support and custody orders upon a showing of changed circumstances." Slawinski, 448 N.J. Super. at 32.

We find no merit in defendant's argument that both parents believed the relocation agreement was in the best interests of D.G. at the time and that his stay in New Jersey with plaintiff was not a changed circumstance. The trial court considered the original motivations of the parties in making the agreement and the circumstances that existed at the time they made it. Sheehan, 51 N.J. Super. at 287-88. The parents were in a relationship. Defendant was to take D.G. to Florida to live with her mother while she looked for work in that state, with plaintiff to follow later. D.G. and his parents formed a family unit at that time. By the time defendant left their child with plaintiff in May of 2018, the parents had terminated the relationship. Our review of the record reveals no "factual findings and legal conclusions" that "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Gnall, 222 N.J. at 428 (quoting Cesare, 154 N.J. at 412).

Finally, defendant argues that if changed circumstances exist under these facts, then the trial court erred in relying solely on factor three to support its best

10

interest findings. Defendant further argues the trial court did not appropriately weigh the other thirteen factors, "under which the deficiencies of [plaintiff's] parental behavior and their detrimental impact on the child were clear."

When determining the custody, the court must consider the fourteen factors in N.J.S.A. 9:2-4(c).[2] In custody cases, the court's focus is "to foster the best interests of the child." R.K., 437 N.J. Super. at 62 (quoting Beck, 86 N.J. at 497). Further, the court "must identify on the record the specific factors that

---

[2] N.J.S.A. 9:2-4(c) provides fourteen factors a court must consider when awarding custody and states in part:

> In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

justify" the court's decision. J.G. v. J.H., 457 N.J. Super. 365, 374 (App. Div. 2019) (quoting Bisbing, 230 N.J. at 322). In addition to "consider[ing] all relevant factors set forth in N.J.S.A. 9:2-4(c)," the court may supplement those factors "by other factors as appropriate." Bisbing, 230 N.J. at 338.

We find the trial court considered evidence in the record in light of the statutory factors. It did not rely on factor three to the exclusion of all others. After finding changed circumstances, the court specifically addressed factors one, four, five, seven, eight, nine, ten, eleven, twelve, and thirteen, making neutral findings or concluding the factors did not apply. Examining the record through factors three and fourteen, the court noted plaintiff's effort to build and maintain a relationship between the D.G. and his brothers in New Jersey and "keep the family together." The court found that D.G., three and one-half years old, would be better able to maintain familial ties with his siblings if he remained with his father in New Jersey. As to factor two, the trial court commented on the obvious acrimony between the parties, and specifically found plaintiff uncooperative in facilitating parenting time between defendant and her child. The court was clear that factors three and fourteen were substantial factors in reaching its custody and parenting time decision.

The trial court supplemented its best interest analysis with findings on other, non-statutory factors, including defendant's decision to leave the child with plaintiff, and the length of time D.G. remained in New Jersey with plaintiff while defendant searched for employment. Bisbing, 230 N.J. at 338.

"[A]s a general proposition, we should accord great deference to discretionary decisions made by Family Part judges, provided they are supported by adequate, substantial, and credible evidence in the record." D.A. v. R.C., 438 N.J. Super. 431, 451 (App. Div. 2014) (citation omitted). On this record, we defer to the trial court's decision where the court evaluated the substantial and credible evidence in the record in light of N.J.S.A. 9:2-4(c) and "other factors as appropriate" in awarding joint custody to both parties and parent of primary residence status to plaintiff. Bisbing, 230 N.J. at 338.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION